UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**WORLDWIDE AIRCRAFT SERVICES Inc.**,
d/b/a JET ICU

    Plaintiff,

v.   Case No. 8:25-cv-00325-WFJ-AEP

**BCBSM, Inc.**,
d/b/a Blue Cross and Blue Shield
of Minnesota;

**WORLDWIDE INSURANCE
SERVICES, LLC,** d/b/a GeoBlue; and

**BLUE CROSS AND BLUE SHIELD
OF FLORIDA, Inc**.

    Defendants.
_____/

## ORDER

Before the Court is Plaintiff Worldwide Aircraft Services' ("Jet ICU") Motion to Remand. Dkt. 11. Defendants BCBSM, Worldwide Insurance Services ("GeoBlue"), and Blue Cross and Blue Shield of Florida ("Florida Blue") have responded in opposition (Dkt. 19), and Plaintiff Jet ICU has replied. Dkt. 20. As explained below, Jet ICU's Motion to Remand is granted.

## BACKGROUND

Plaintiff Jet ICU alleges that on or about January 20, 2020, S.L. was enrolled in a self-funded health benefit plan sponsored by Minnesota-based CHS, Inc. and administered by Minnesota-based BCBSM. Dkt. 1-1 ¶ 5. On the same day, Plaintiff contends that S.L. suffered a medical incident in Mexico that required emergency air transportation to Tampa, Florida. *Id.* ¶¶ 6–8. The treating physician determined immediate air medical transportation was appropriate and necessary for the treatment of S.L.'s condition. *Id.* ¶ 7.

At the time of S.L.'s air transportation, Plaintiff did not have a pre-negotiated contract with Defendants, and Plaintiff was not part of Defendants' provider network. *Id.* ¶ 10. JET ICU attempted to obtain pre-authorization for the services at issue from BCBSM, but the "BC&BS Minnesota office was closed for the MLK holiday." Dkt. 1 ¶ 30. Following the transportation of S.L., Plaintiff billed Defendants $185,819 for the ground and air transportation services it rendered, based on its "usual and customary rate." Dkt. 1-1 ¶¶ 8, 12. The insurance claim was initially only submitted to GeoBlue, as required by S.L.'s plan. Dkt. 1 ¶ 31; Dkt. 1-8. GeoBlue then passed the claim through an electronic system to BCBSM—the named claims administrator for S.L.'s health insurance plan—who denied the claim in its entirety on March 5, 2020, as S.L.'s plan did not cover it. Dkt. 1 ¶ 31-32; Dkt. 1-1 ¶ 13; *see also* Dkt. 1-7 at 8 ("This Plan, financed and administered by CHS Inc.,

is a self-insured medical Plan. Blue Cross and Blue Shield of Minnesota (Blue Cross) is the Claims Administrator and provides administrative services only."). BCBSM denied the claim on the basis that Jet ICU's services were "not medically necessary." Dkt. 1-6 ¶ 7; Dkt. 1-10 at 9.

On October 26, 2020, Jet ICU sent Florida Blue a letter "appealing" BCBSM's denial of its claim. Dkt. 19-1 at 11–12. In the letter, Jet ICU informs Florida Blue that when it initially appealed to GeoBlue (Dkt. 19-1 at 16–17), it was advised "to appeal directly to the local provider." *Id.* at 11. Florida Blue responded on November 10, 2020, informing Jet ICU that Florida Blue was investigating the claim and that Jet ICU had submitted an incorrect rendering NPI number. Dkt. 11-2. On November 18, 2020, Jet ICU sent a letter enclosing a "resubmission claim with valid rendering NPI and Tax ID." Dkt. 19-1 ¶ 18. Florida Blue responded electronically and notified Jet ICU that the "Ambulance Pickup Code is missing/invalid." *Id.* ¶ 19. Jet ICU never made further submissions to Florida Blue until it sent a pre-suit notice letter on June 18, 2024. Dkt. 1-1 at 24. Florida Blue responded to JET ICU's pre-suit notice letter, informing Jet ICU that Florida Blue had "no evidence of receiving a claim for S.L. for service date January 20, 2020, under the member ID provided." Dkt. 19-1 at 9. Additionally, Jet ICU's pre-suit demand letter only asserts a civil theft claim against BCBSM and GeoBlue. Dkt. 1-1 at 25.

Jet ICU initially filed the Complaint in state court and raised three counts under state law: (1) Theft of Services under Fla. Stat. § 772.11; (2) Civil Conspiracy; and (3) Quantum Meruit. *See* Dkt. 1-1.

Defendants removed the case on February 7, 2025, asserting that "Complete diversity exists between the Plaintiff and defendants BCBSM and Worldwide Insurance Services, LLC d/b/a GeoBlue ("GeoBlue") and the amount in controversy exceeds $75,000, exclusive of interest and costs. Named defendant Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue") has been fraudulently joined and the court must ignore the presence of this non-diverse defendant for purposes of diversity jurisdiction. . . . Accordingly, removal is proper pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332." Dkt. 1 at 1–2. Subsequently, Defendants filed a motion to dismiss, arguing this Court lacks personal jurisdiction over non-resident Defendants BCBSM and GeoBlue, Plaintiff's state law claims are completely preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and the Complaint fails to sufficiently state a cause of action on all counts. *See* Dkt. 8.[1]

Plaintiff now files a motion for remand, arguing that this case cannot be removed under diversity jurisdiction since Jet ICU did not fraudulently or

---

[1] Defendants' motion to dismiss is not addressed in this Order. Both parties agree that the Court should first address Plaintiff's motion for remand before considering Defendants' motion to dismiss. Dkt. 17 ¶ 2.

4

improperly join Florida Blue as a defendant to defeat (Federal) subject matter jurisdiction. Dkt. 11.

## LEGAL STANDARD

Federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A defendant may remove a civil action filed in state court to federal court when the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). A federal court can decide a case under its diversity jurisdiction if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Parties are "complete[ly] divers[e]" when the plaintiff is not domiciled in the same state as any defendant. *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1564 (11th Cir. 1994). A removing defendant bears the burden of proving the existence of federal jurisdiction. *See Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Because removal from a state court constitutes an infringement upon state sovereignty, the removal requirements must be strictly construed, and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

Nevertheless, an action may still be removable if the joinder of non-diverse parties is found to be fraudulent. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440

(11th Cir. 1983), *superseded by statute in part on other grounds as recognized in Wilson v. General Motors Corp.*, 888 F.2d 779, 782 (11th Cir. 1989). "Removability should be determined 'according to the plaintiff's pleading at the time of the petition for removal.'" *Id.* (citations omitted). "A fraudulently joined defendant need not consent to removal." *Restivo v. Bank of Am. Corp.*, 618 F. App'x 537, 540 n.5 (11th Cir. 2015) (citation omitted).[2]

Courts may award attorney's fees, costs, and expenses incurred from the removal when a case is remanded to state court. 28 U.S.C. § 1447(c). However, courts should only do so when the "removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). This standard "deter[s] removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining [Congress's] basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

## DISCUSSION

Based on a careful review of the pleadings, the Court grants Plaintiff's Motion to Remand the case back to state court. As discussed below, Defendants' fraudulent joinder claim fails because there is "a possibility of stating a valid cause of action"

---

[2] Defendants GeoBlue and Florida Blue have consented to removal as required by 28 U.S.C. § 1446(b)(2)(A). Dkt. 1-3; Dkt. 1-4; *see Bailey v. Janssen Pharma., Inc.*, 536 F.3d 1202, 1207 (11th Cir. 2008).

against Florida Blue. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

## I. Fraudulent Joinder

"When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). In such circumstances, "[t]he plaintiff is said to have effectuated a 'fraudulent joinder,' and a federal court may appropriately assert its removal diversity jurisdiction over the case." *Id.* (citation omitted). To establish fraudulent joinder of the non-diverse defendant, the removing party must satisfy a "heavy" burden of proving by clear and convincing evidence that either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

This standard for whether the plaintiff can establish a cause of action against the resident defendant is "very lenient." *Ullah v. BAC Home Loans Servicing LP*, 538 F. App'x 844, 846 (11th Cir. 2013). Indeed, this is a lower standard than a Rule 12(b)(6) plausibility standard. *Stillwell*, 663 F.3d at 1333. "[F]ederal courts are not

to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.* (citation omitted). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (citation omitted). Put simply, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (emphasis in original).

Additionally, the fraudulent joinder inquiry "must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (citation omitted). "The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under [Federal Rule of Civil Procedure] 56(b).'" *Id.* at 1322–23 (citation omitted). As such, "the district court must 'resolve all questions of fact . . . in favor of the plaintiff.' But there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id.* at 1323 (omission in original) (citation omitted).

Here, Defendants only argue the first type of fraudulent joinder—i.e., "there is no possibility [Jet ICU] can establish a cause of action against the resident

8

[Defendant Florida Blue].” *Stillwell*, 663 F.3d at 1332; Dkt. 1 ¶ 17; Dkt. 19 at 10. The parties do not dispute that this Court only has diversity jurisdiction over the removed case if Florida Blue (domiciled in Florida) was fraudulently joined. *See* Dkt. 1 ¶ 4 ("Defendant Florida Blue is a Florida corporation with its principal place of business in Jacksonville, Florida. While, under 28 U.S.C. § 1332(c)(1), Florida Blue is a Florida citizen and non-diverse, Florida Blue is fraudulently joined, and its citizenship should be disregarded for purposes of diversity."); Dkt. 11. The question for the Court, therefore, is whether there is a "possibility" that Jet ICU could state a valid claim against Florida Blue. *Triggs*, 154 F.3d at 1287.

Even if the Court agrees with Defendants' well-reasoned analysis that Jet ICU has no possibility of stating a claim in Counts I (Civil Theft) and II (Civil Conspiracy), Defendants did not meet their heavy burden through clear and convincing evidence on Count III. In Count III of Plaintiff's Complaint, a common-law claim of quantum meruit is alleged against all Defendants. Dkt. 1-1 at 17. Defendants argue Jet ICU has no possibility of establishing a quantum meruit claim against Florida Blue because Jet ICU's services were provided to S.L. and "[t]hat does not confer a direct benefit on S.L.'s insurer. And it certainly does not and cannot confer a direct benefit on Florida Blue – who the undisputed evidence confirms is not S.L.'s insurer." Dkt. 19 at 14–15.

9

A claim for quantum meruit requires a plaintiff to allege: "the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *Paschen v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999)).

Here, Jet ICU has a possibility of stating a claim against Florida Blue for quantum meruit. As an initial matter, Jet ICU brought Florida Blue into this insurance dispute only because GeoBlue advised Jet ICU "to appeal directly to the local provider." Dkt. 19-1 at 11–12, 16–17. When Jet ICU's appeal to Florida Blue was unsuccessful, Plaintiff filed a complaint alleging that Defendants (including Florida Blue) "knew, or reasonably should have known," about the need to provide ground and air transportation services to S.L. under the patient's insurance contract. Dkt. 1-1 ¶ 69; *see* Dkt. 19-1 at 11–51 (showing the "appeal" letter sent to Florida Blue along with S.L.'s medical records). Jet ICU contends Defendants were "aware or reasonably should have been aware, that Jet ICU was the air ambulance provider chosen by [S.L.] and/or [S.L.'s then-treating physician]." Dkt. 1-1 ¶ 78; *see* Dkt. 19-1 at 19–24 (showing "Patient Services Agreement" sent to Florida Blue). Because there was no pre-negotiated contract between the parties, Defendants allegedly

"knew" that Jet ICU would charge its "usual and customary rate for air ambulance services." Dkt. 1-1 ¶¶ 70–71; *see* Dkt. 19-1 at 11–12 (showing Jet ICU's "appeal" letter to Florida Blue); Dkt. 11-2 (showing Florida Blue's letter confirming it is reviewing Jet ICU's claim); Dkt. 19-1 ¶¶ 18–19. Thus, Jet ICU supposedly conferred a "significant economic benefit" upon Defendants by providing S.L. with emergency transportation services to which S.L. was entitled under its insurance plan. Dkt. 1-1 ¶¶ 68–69, 80.

Defendants, however, contend the "benefit" element cannot be met and point to "[n]umerous courts in Florida (and, indeed, around the country) [that] have held [] a healthcare provider's treatment of an insured patient does not confer a benefit upon the insurer." Dkt. 19 at 14 (citing *Apex Toxicology, LLC v. United Healthcare Servs., Inc.*, No. 17-61840-CIV, 2020 WL 13551296, at *7 (S.D. Fla. Jan. 17, 2020); *Boca Raton Reg'l Hosp., Inc. v. Celtic Ins. Co.*, No. 19-80650-CIV, 2020 WL 9458896, at *10 (S.D. Fla. Feb. 6, 2020); *Alfredo Murciano, M.D. P.A. v. Cigna Health & Life Ins. Co.*, No. 23-22885-CIV, 2024 WL 2797393, at *2 (S.D. Fla. Jan. 11, 2024)). Defendants rely on several district court opinions from the Southern District of Florida that stand for the proposition that a healthcare provider who provides services to an insured does not benefit the insurer.

Previous district courts in Florida have acknowledged a split on whether providing medical services to an insured confers a direct benefit upon the insurer.

11

*See Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1303 (S.D. Fla. 2021) (collecting cases and noting that "[t]here is a clear split of authority within District Courts in the Southern and Middle Districts of Florida as to whether the provision of medical treatment to an insured confers a direct benefit upon an insurer"); *Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, No. 6:19-cv-1694, 2020 WL 7389987, at *11–12 (M.D. Fla. June 1, 2020), *report & recommendation adopted*, 2020 WL 7389447 (M.D. Fla. June 16, 2020) (collecting cases and recognizing a split of authority within Florida District Courts).

This Court need not weigh in on the split of authority within Florida District Courts. The Court must use "the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court," *Stillwell*, 663 F.3d at 1334, to determine if "there is even a possibility that a state court would find that [Jet ICU's] complaint states a cause of action against" Florida Blue, *id.* at 1333. Under Florida's lenient pleading standards, "Plaintiffs merely [have] 'to state a case showing a legal liability.'" *SFM Holdings, Ltd. v. Fisher*, 465 F. App'x 820, 821 (11th Cir. 2012) (quoting *Messana v. Maule Indus.*, 50 So. 2d 874, 876 (Fla. 1951)).

As discussed above, the Court finds there is a possibility Jet ICU complied with Florida's pleading standards by "alleging the requisite elements of [quantum meruit] and pleading factual matter sufficient to apprise [Plaintiff's] adversary of

what the adversary is called upon to answer." *Id.* (cleaned up). Moreover, Florida caselaw has established that it is sufficient for a plaintiff to allege facts that support an argument that a provider's treatment of an insured conferred a benefit on the insurer. *See Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1199 (Fla. 4th DCA 2006) (reversing a trial court's dismissal of a quantum meruit/unjust enrichment claim on the basis that any benefit of the provision of healthcare services flowed to the patient, not the insurer); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1228 (Fla. 1st DCA 2005) (same).

At bottom, Defendants contend that "there is no possibility Jet ICU can recover against Florida Blue . . . based upon an undisputed factual record." Dkt. 19 at 11. Indeed, Jet ICU does not dispute many of the defense affidavits, but the sworn statements fail to rebut Count III—quantum meruit. Although the Complaint might fail to state a claim on remand, that determination is not within the purview of this Court. *See Henderson*, 454 F.3d at 1284 ("[T]he decision as to the sufficiency of the pleadings is for the state courts . . . ."). Even in light of Defendants' undisputed factual record, it is possible—even if uncertain, given the evidence in the record—for Jet ICU to state a claim against Florida Blue. Because Defendants did not meet their heavy burden through clear and convincing evidence, Florida Blue is not a fraudulently joined party.

13

## II.     Attorney Fees

Jet ICU requests that the Court award attorney's fees incurred from the removal, pursuant to 28 U.S.C. § 1447(c). Dkt. 11 at 9. Although the Court rejected the Defendants' diversity of citizenship argument, Defendants had an objectively reasonable basis for believing removal to be proper, as the various affidavits and exhibits could potentially raise doubt as to whether Florida Blue could be a defendant. Although Defendants' contention did not meet the burden required for the fraudulent joinder standard, it was nonetheless objectively reasonable. *See Martin*, 546 U.S. at 136 ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."). Therefore, the Court denies Jet ICU's fee request.[3]

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff Jet ICU's Motion to Remand to State Court is **GRANTED**. Dkt. 11.

2. Plaintiff's request for attorney's fees and costs is **DENIED**. Dkt. 11 at 9.

---

[3] Jet ICU also requests this Court "address the filing of false evidence by" BCBSM under Rule 11(b)(1)(4), (c)(1). Dkt. 11 at 9. The Court declines to do so. As explained by Sylvia Dornes' supplement declaration, the topographical error in a single digit in S.L.'s member identification letter initially led her to believe that Jet ICU had not submitted any claims to Florida Blue. Dkt. 19-1 ¶¶ 10–11. Ms. Dornes' supplement declaration corrects this mistake and fully discloses the claim Jet ICU made to Florida Blue. *Id.* at 11–51.

14

3. Defendants' Motion for Oral Argument is **DENIED** as moot. Dkt. 19-2.

4. The Clerk is directed to **REMAND** this action to the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (Case Number 24-CA-010046, division "B"), to **TERMINATE** all pending motions and deadlines, and to **CLOSE** the case.

**DONE AND ORDERED** in Tampa, Florida, on March 31, 2025.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record